Filed 3/14/25  Lester v. Tender Love and Care CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CATHERINE LESTER, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TENDER LOVE AND CARE, INC., et al., <br><br> Defendants and Respondents. | D085023 <br><br><br><br> (Super. Ct. No. RIC2001980) |
| CLAUDIA TORRES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TENDER LOVE AND CARE, INC., et al., <br><br> Defendants and Respondents. | (Super. Ct. No. RIC2004000) |

APPEALS from judgments of the Superior Court of Riverside County, O.G. Magno, Judge.  Affirmed.

Robinson Bradford and Matthew C. Bradford for Plaintiffs and Appellants.

Law Offices of Akudinobi & Ikonte, Emmanuel C. Akudinobi and Chijioke O. Ikonte, for Defendants and Respondents.

Catherine Lester and Claudia Torres appeal following a jury verdict in their lawsuits, which were consolidated for trial, against Tender Love and Care, Inc. (TLC) and Vegi, Inc. (collectively, defendants). The lawsuits arose out of Lester's and Torres's simultaneous employment with defendants' two different mental health therapy businesses. Among other things, Lester and Torres alleged violations of California's wage and hour laws. The jury found against Lester on all of her causes of action. The jury found in favor of Torres on certain causes of action, including an award of $486.06 in unpaid overtime wages against Vegi, Inc.

On appeal, Lester and Torres contend that insufficient evidence supports the jury's verdict in certain respects, and they both seek a reversal and remand for a retrial on that basis. Lester contends that no substantial evidence supports the jury's findings that (1) she was paid all of the wages she was due; (2) her paystubs from defendants were legally compliant; and (3) defendants paid her all the overtime wages she was due. Torres contends that there was no evidence at trial supporting the jury's award of overtime wages in the amount of only $486.06.

As we will explain, Lester and Torres have failed to meet their burden to establish that they are entitled to relief on appeal. We accordingly affirm the judgments.

2

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the trial testimony, Vegi, Inc., which does business as Family Matters, provides mental health therapy services. Vegi, Inc. is run by its clinical director, Sharada Vegi (Ms. Vegi).

TLC is a nonprofit corporation that provides services in the area of foster care, adoption, and mental health. During the relevant time frame, Ms. Vegi was TLC's chief executive officer and administrator, and a board director.

Vegi, Inc. and TLC were located in the same building, but in different office suites. The two corporations shared some common employees and some common clients. As relevant here, there were instances in which a mental health therapist would be employed by both TLC and Vegi, Inc. Office support staff was also employed by both organizations.

A. *Proceedings Concerning Torres*

Torres filed a lawsuit against Vegi, Inc. and TLC on October 7, 2020.[1] Throughout her complaint, Torres referred to Vegi, Inc., and TLC, collectively, as "Family Matters." Torres alleged that in February 2018, "Family Matters hired [her] as a 'Receptionist/Office Manager' to work out of their office." According to Torres, she was paid an hourly wage by "Family Matters" until she was terminated in August 2020.

Torres's complaint contained 21 causes of action against both Vegi, Inc. and TLC, most of which are not at issue in this appeal. As relevant here,

---

[1]    Torres (as well as Lester) also sued Ms. Vegi. For reasons that are not immediately apparent from the record provided to us, the judgments do not mention Ms. Vegi, and the verdict forms show the jury was not asked to make findings regarding Ms. Vegi's liability. Ms. Vegi is not a party to this appeal.

however, Torres's complaint alleged a cause of action against defendants for "Failure to Pay Overtime Wages" (Lab. Code, § 1194).

Regarding that cause of action, the complaint alleged that "Family Matters required Ms. Torres to work hours in excess of eight in a day and 40 in a week" but "did not pay Ms. Torres for all the overtime hours that she worked." The complaint's preliminary factual allegations stated, "Despite paying Ms. Torres on an hourly basis and having Ms. Torres sign-in and sign-out to record her hours worked, Family Matters did not pay Ms. Torres her overtime rate for all overtime hours worked. Ms. Torres knew that no matter how many hours she spent working she would not be paid any overtime. Due to Family Matters['] failure and/or refusal to record the number of overtime hours worked by Ms. Torres, none of Ms. Torres' pay stubs contain any record of her overtime hours actually worked for any pay period. [¶] . . . Moreover, Family Matters paid Ms. Torres two separate paychecks. Each pay period Ms. Torres would receive one paycheck from [Vegi, Inc.] and one paycheck from TLC. It appears Family Matters paid Ms. Torres using two separate companies to avoid any appearance that Ms. Torres was working overtime hours for which she was not getting paid overtime wages."

After Torres's lawsuit was consolidated for trial with Lester's lawsuit, a jury trial took place over 13 court days between September 16 and October 5, 2022. However, not all of the jury trial was transcribed by a court reporter. Most significantly, there is no record of the parties' opening statements or closing arguments. Appellants have not provided a settled statement for the parts of the trial that were not transcribed. (Cal. Rules of Court, rule 8.137.)

4

The jury made findings in favor of Torres on her cause of action for failure to pay overtime as to one of the defendants. Specifically, it found that Vegi, Inc. failed to pay $486.06 in overtime compensation to Torres.[2]

B.     *Proceedings Concerning Lester*

Lester filed a lawsuit against Vegi, Inc. and TLC on June 24, 2020. In her operative first amended complaint, Lester alleged that in March 2018, she was employed as a part-time therapist by Vegi, Inc. Her duties were "to assess/evaluate clients, provide one on one and family therapy sessions with clients, and provide all related documentation of each client's progress to the relevant government and non-government entities." Lester alleges she was initially paid $22.00 per hour, which had increased to $24.00 per hour when she was terminated in April 2020.

According to Lester "she was frequently required to work without any pay" for several different reasons.

First, according to the first amended complaint, if a client did not show up for a scheduled appointment, Lester would not get paid. However, Lester was nevertheless required to wait 15 minutes past the start time of the appointment, and then make telephone calls and fill out paperwork—a process which took approximately 40 minutes.

Second, Lester alleged that when she performed "an 'intake' or 'assessment'" for new clients she was paid "25 minutes for each 'assessment' . . . if the client signed" with the organization, but she was "not paid for the time it took to write[]up a summary of the 'assessment,' have the

_____

[2]     In addition to finding in favor of Torres on her claim for nonpayment of overtime compensation in the amount of $486.06, the jury also made findings in favor of Torres regarding pay stub and meal break violations (Lab. Code, §§ 226, 226.7) and nonpayment of regular wages (*id.*, §§ 201, 202, 218), but those findings are not relevant in this appeal.

5

summary reviewed and approved by [her supervisor], and then eventually sent to all necessary government and non-government entities. The entire 'assessment' protocol took Ms. Lester approximately 70-75 minutes." Moreover, if the subject of the assessment did not return as a client, Lester was not paid anything in connection with the assessment.

Third, Lester alleged she was paid only 25 minutes for drafting requests for extensions of therapy to insurance companies, although the task usually took 45 minutes. Further, she was not paid at all for her time relating to the request for an extension if the client did not return for further therapy.

Fourth, Lester alleged that she was required to attend mandatory monthly one-hour meetings, for which she was never paid.

Finally, Lester alleged that between August 2019 and December 2019 she spent approximately 10 hours each week performing "clinical manager" duties for which she was not paid.

With respect to her entitlement to overtime wages, Lester alleged that during her "entire employment . . . she consistently worked at least 8-11 hours each day and typically worked 4-5 days a week."

Lester's first amended complaint contained 14 causes of action, many of which are not at issue in this appeal. As relevant here, however, the first amended complaint alleged causes of action against Vegi, Inc. and TLC for "Failure to Pay Wages Due," "Failure to Pay Overtime Wages," and "Pay Stub Violation."[3]

---

[3] Lester's first amended complaint did not cite any statutory provisions in connection with the relevant causes of action. The jury instructions identified the following statutory citations: "Nonpayment of Wages— Essential Factual Elements (Lab. Code, §§ 201, 202, 218)"; "Nonpayment of

6

The cause of action for failure to pay wages did not elaborate on the theory under which defendants were alleged to owe unpaid wages to Lester. Instead, it alleged generally, "Although Defendants agreed to pay Plaintiff $22.00/hr - $24.00/hr for each shift worked from March 26, 2018 – April l, 2020, Defendants have failed to pay Plaintiff for all hours that she worked between March 26, 2018 – April 1, 2020." The same is true with respect to the cause of action for failure to pay overtime wages, which alleged generally that "despite requiring Ms. Lester to work overtime, Family Matters did not pay Lester for all the overtime hours that she worked from March 26, 2018 – April 1, 2020." Similarly, the cause of action for pay stub violations made its allegations only generally: "Since March 26, 2018 – April 1, 2020, the Defendants violated California law by failing to either provide any paystubs or wage statements to Ms. Lester and/or such paystubs or wage statements contained inaccurate hours that Plaintiff worked, gross pay or net pay during the pay period."

The jury found against Lester on all of the causes of action presented to it.

## II.

## DISCUSSION

On appeal, both Torres and Lester contend that insufficient evidence supports certain of the jury's findings on the special verdict forms.

A.  *Standard of Review*

"As the plaintiff[s] who failed to prevail before a jury, [Torres and Lester] face[] an extremely high burden on appeal. 'In a case where the trier of fact has determined that the party with the burden of proof did not carry

---

Overtime Compensation—Essential Factual Elements (Lab. Code, § 1194)"; and "Failure to Provide Compliant Pay Stubs (Lab[.] Code § 226)."

its burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment." [Citations.] Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*." [Citation.] Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citation.] This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing plaintiff to meet, because unless the trier of fact made specific factual findings in favor of the losing plaintiff, we presume the trier of fact concluded that 'plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof.' " (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651.) "Furthermore, we 'must resolve all conflicts in the evidence in favor of the prevailing party and must draw all reasonable inferences in support of the trial court's judgment,' " and " ' " ' "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " ' " (*Ibid.*)

B.    *Torres's Contentions on Appeal*

On Torres's cause of action for nonpayment of overtime compensation (Lab. Code, § 1194), the jury found that Vegi, Inc. owed $486.06 in unpaid overtime to Torres. Without specifying what she believes the amount of the award should have been instead of $486.06, Torres argues that the amount awarded by the jury was incorrect. As we will explain, Torres's challenge to the jury's verdict on her cause of action to recover unpaid overtime fails for multiple reasons.

8

First, Torres has failed to set forth all of the relevant evidence in her appellate brief.  If, as here, "one is going to make a 'the-facts-compel-that-I-win-as-a-matter-of-law' argument, one's brief must fairly state all the evidence." (*McCauley v. Howard Jarvis Taxpayers Assn.* (1998) 68 Cal.App.4th 1255, 1266.)  "In every appeal, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment.  [Citations.]  'Further, the burden to provide a fair summary of the evidence "grows with the complexity of the record.  [Citation.]" ' [Citations.]  To meet its burden on appeal to show a finding of fact is not supported by substantial evidence, appellants cannot recite only evidence in their favor, but must ' "set forth in their brief *all* the material evidence on the point and *not merely their own evidence*.  Unless this is done the error is deemed to be waived." [Citations.]'  [Citations.]  [¶]  When an appellant's opening brief states only the favorable facts, ignoring evidence favorable to respondent, the appellate court may treat the substantial evidence issues as waived and presume the record contains evidence to sustain every finding of fact.  [Citations]  'As with all substantial evidence challenges, an appellant challenging [a finding of fact] must lay out the evidence favorable to the other side and show why it is lacking.  Failure to do so is fatal.  A reviewing court will not independently review the record to make up for appellant's failure to carry his burden.' " (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1174 (*Slone*).)

In support of Torres's contention that she "rarely worked at TLC" and "most days spent none of her work time at TLC," the only thing Torres cites is five pages from her *own* trial testimony, and a single exhibit.  Defendants point out in their respondents' brief that they presented a significant amount of evidence on the subject of Torres's employment by both Vegi, Inc. and TLC

9

to contradict Torres's testimony that she almost always performed work only for Vegi, Inc., and that Torres's timesheets were therefore correct. Because Torres failed to identify any of that evidence in her opening appellate brief, she has failed to carry her burden to "lay out the evidence favorable to the other side and show why it is lacking." (*Slone, supra,* 106 Cal.App.5th at p. 1174.) We therefore "treat the substantial evidence issues as waived and presume the record contains evidence to sustain every finding of fact." (*Ibid.*)

Next, even if we overlook Torres's failure to address the evidence favorable to defendants, her argument is deficient for the additional reason that, in making her argument, she has failed to identify the evidence that is necessary to establish one of her *own* fundamental factual assertions. The factual premise of Torres's argument regarding her entitlement to unpaid overtime is that she "frequently worked more than eight hours in a day for which she was not paid overtime," which she presumably believes was not compensated by the jury's award of only $486.06. However, the only record citation that Torres gives for that factual contention in the argument portion of her brief is to a single trial exhibit, which is a collection of emails setting forth Torres's upcoming work schedule. Torres has not identified any instance in that exhibit where she was scheduled to work longer than eight hours per day. Indeed, from our review of the exhibit, it appears that Torres was normally scheduled for a shift of no more than nine hours, with a one-hour lunch break. Thus, Torres's appellate briefing does not provide record support for her contention that she "frequently worked more than eight hours in a day for which she was not paid overtime." Moreover, even if Torres had supported her argument with citation to evidence that she worked in excess

10

of eight hours on some days,[4] she has not explained why the jury's award of $486.06 was not sufficient to cover those overtime hours.

Finally, Torres argues that even if the timesheets she filled out "are treated as correct" in showing that she worked for both TLC and Vegi, Inc. on the same day, she should be awarded overtime because "TLC and [Vegi, Inc.] should be considered a joint employer." According to Torres, "under the joint employer rule, the jury should have treated Ms. Torres's separate timecards for [Vegi, Inc.] and TLC as a single shift for a single entity."[5] She contends that, accordingly, whenever she worked more than eight hours in a day for both employers *collectively*, she should have been paid overtime.

This argument fails for two reasons. First, as we have explained, Torres has pointed to no evidence that she worked over eight hours a day for

---

[4]     In the statement of facts portion of her brief, Torres cites her testimony that she sometimes ended up staying in the office for 15 or 30 minutes past the last patient appointment. We infer that, even though Torres did not refer to that fact in the argument portion of her brief, she may have intended to rely on it to support her contention that she sometimes worked in excess of eight hours per day.

[5]     We note that the only legal citation that Torres provides for this argument is to *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 543. Although *Morales* discussed the "joint employment" doctrine in the context of a claim for unpaid overtime (*ibid.*), it did not address the issue that Torres discusses here, namely, whether the hours that an employee works for joint employers must be combined to determine whether the employee worked over eight hours in a day and is therefore entitled to overtime compensation. Instead, the issue in *Morales* was whether a public employee in the amusement and recreation industry, which is normally exempted from paying overtime compensation, could claim entitlement to overtime under the joint employment doctrine when the public employer loaned him out to work at private events. "It is [Torres's] burden to provide reasoned argument and citations to relevant legal authority to support [her] argument." (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

11

both employers *collectively*.  The record might contain such evidence, but Torres has not identified it in making her appellate argument, and it is not our role to search the record of the 13-day trial to locate it.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.)  Second, Torres's argument depends on the legal premise that Vegi, Inc. and TLC were joint employers who should be treated as the same entity for purposes of calculating whether Torres was owed overtime on any particular day.  However, according to defendants, Torres did not present a joint employer theory at trial as part of her claim for unpaid overtime.

" '[A] party is not permitted to change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but [also] manifestly unjust to the opposing litigant'. "  (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 (*Cable Connection*).)  Accordingly, if Torres did not rely on a joint employer theory at trial, she cannot do so for the first time on appeal.

The written jury instructions and the special verdict forms provide no indication that the jury was asked to decide if Vegi, Inc. and TLC were joint employers, or to decide whether to award overtime compensation on that basis.  Further, as we have explained, no court reporter was present for the closing arguments.  Without a record of those proceedings, we are unable to determine which facts and legal theories Torres relied upon during the jury trial.  As the appellant, it is Torres's burden to provide us with an adequate record.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).)  Because the record is insufficient for us to determine whether Torres proceeded at trial on a joint employer theory, Torres has not satisfied her burden on appeal.

12

In sum, for all of the reasons set forth above, we reject Torres's challenge to the jury's verdict on her cause of action for unpaid overtime compensation.

C.  *Lester's Contentions on Appeal*

Lester contends that insufficient evidence supports the jury's finding that (1) she was paid all of the wages she was due; (2) her paystubs were compliant with legal requirements; and (3) defendants paid her all the overtime wages she was due.

1.  *Lester's Challenges to the Sufficiency of the Evidence Based on the Theory She Was Paid on a Piece-rate Basis*

We first consider Lester's first two contentions, which concern the verdicts regarding her causes of action for unpaid wages and paystub violations. In challenging those verdicts, Lester relies exclusively on the theory that she was paid on a "piece[-]rate" basis, rather than on an hourly basis, but that defendants did not comply with the rules applicable to employees paid on such a basis. Lester argues that "despite Defendants' use of a piece[-]rate system, Defendants did not pay Ms. Lester for her nonproductive time, Defendants did not pay Ms. Lester for her rest breaks and Defendants did not pay Ms. Lester for all of the hours that she worked." According to Lester, because defendants "paid Ms. Lester on a piece[-]rate basis without following the rules applicable to piece[-]rate employment," she was not paid "for at least 600 hours that she worked." She also argues that "the paystubs Defendants gave to Ms. Lester do not contain the required information" for someone compensated on a piece-rate basis.[6]

_____

6      For the first time in her reply brief, Lester appears to widen her argument beyond the contention that defendants failed to follow the rules applicable to piece-rate compensation. Specifically, Lester contends,

13

"Under a piece-rate system, employees are not paid by the hour, but rather are compensated based on activities, tasks, or units of production completed [citations], such as the quantity of produce picked, the number of yards of carpet installed, or the number of miles driven. . . . California has long recognized that wages may be paid on a piece-rate basis." (*Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1003 (*Nisei Farmers League*).)

Effective in 2016, the Legislature enacted Labor Code section 226.2, which codifies the requirements that apply when an employee is compensated on a piece-rate basis. "[Labor Code] section 226.2 subdivision (a)(1) states that piece-rate employees 'shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation.' The term 'other nonproductive time' is defined as 'time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis.' ([Lab. Code,] § 226.2.) Further, subdivision (a) specifies that the separate compensation for rest and recovery time must be at an hourly rate that is no less than the applicable minimum wage, and in some instances must be greater than minimum wage, depending on a statutory formula. ([Lab. Code,] § 226.2, subd. (a)(3)(A), (B).) Similarly, the separate compensation for employees' other nonproductive

"Regardless of whether Ms. Lester is considered a piece[-]rate employee or an hourly employee, Respondents were required to pay Ms. Lester for her time when they required her to be present for a therapy session." We do not consider the contention because it was not raised until Lester's reply brief. (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070, ["An appellant may not put off to its reply brief the presentation of a legal argument supporting a claim of error asserted in its opening brief, for to do so would unfairly deprive the respondent of the ability to rebut the argument."].)

time must be no less than the applicable minimum wage. ([Lab. Code,] § 226.2, subd. (a)(4).) (*Nisei Farmers League, supra,* 30 Cal.App.5th at p. 1007.) Further, for employees paid on a piece-rate basis, employers are required to provide paystubs showing "[t]he total hours of compensable rest and recovery periods, the rate of compensation, and the gross wages paid for those periods during the pay period," and, in some cases, "the total hours of other nonproductive time, . . . the rate of compensation, and the gross wages paid for that time during the pay period." (Lab. Code, § 226.2, subd. (a)(2).)

Lester argues that the evidence at trial showed that she was compensated on a piece-rate basis because "Defendants paid Ms. Lester for her clinical work as being fixed amounts of time for various tasks." However, according to Lester, "In violation of California law, Defendants did not keep track of or pay Ms. Lester for her nonproductive time." Lester contends her " 'non-productive time' " included "all administrative tasks, all company meetings, all time spent reporting, all time spent waiting for her appointments, and all preparatory time." Further, because her paystubs did not show any payment for nonproductive time, "all of the paystubs provided by Defendants to Ms. Lester fail to comply" with the statutory requirements, and "the jury's verdict that Defendants provided Ms. Lester California compliant paystubs is necessarily wrong."

Lester further argues that, as an employee compensated on a piece-rate basis, "Defendants were required to separately pay Ms. Lester for her rest breaks and to show the payments on her paystubs," but they did not do so. Based on this rest break argument, Lester contends that "[t]he jury's verdicts on Ms. Lester's unpaid wages and paystub claims are wrong as a matter of law."

15

According to defendants, we should reject Lester's contention that she was subject to the rules for employees compensated on a piece-rate basis because that was not the theory Lester presented at trial. Defendants rely on the principal, discussed above, that a party is not allowed to adopt a different theory on appeal. (*Cable Connection, supra,* 44 Cal.4th at p. 1350, fn. 12.) Defendants argue, "In this case, the matter was tried on the basis that Lester was an hourly employee that was not subject to any piece-rate regulations." They further point out that "Lester did not seek any special jury instructions on piece[-]rate employee[s]."

Lester initially failed to include the jury instructions in the appellate record. However, after Lester complied with our request to augment the record, we reviewed those instructions, which contain no specific instruction regarding piece-rate compensation. Further, defendants have identified a portion of the reporter's transcript, in which counsel for Lester explained to the trial court, during a discussion about an evidentiary issue, that Lester was not proceeding on the theory that she was paid on a piece-rate basis. Counsel explained, "She's an hourly employee. . . . She's not a piece-rate employee."

Both of these items—the jury instructions and counsel's statements to the trial court—support defendants' contention that Lester did not proceed at trial on the theory that she was compensated on a piece-rate basis but that defendants failed to follow the rules applicable in that context. However, we are ultimately unable to confirm the legal theory on which Lester's case was presented to the jury because the closing arguments were not transcribed and Lester has not provided a settled statement. " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]' " (*Jameson, supra*, 5 Cal.5th at p. 609), and when " ' "the record is

16

inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Ibid.*) By providing an inadequate record, Lester has defaulted on her argument that, due to her alleged compensation on a piece-rate basis, the evidence required a finding that (1) she was not paid all of the wages she was due; and (2) her paystubs were not legally compliant.

2. *Lester's Challenge to the Sufficiency of the Evidence Regarding Overtime Wages*

Lester's remaining argument is that insufficient evidence supports the jury's adverse finding on her claim for nonpayment of overtime compensation. (Lab. Code, § 1194.) Specifically, Lester did not prevail on her claim for nonpayment of overtime compensation because the jury made findings on the special verdict forms that Lester did not "work overtime hours" for either Vegi, Inc. or TLC.

As the basis for her appellate argument, Lester contends that "the uncontested evidence shows Ms. Lester regularly worked more than 8 hours in a day and 40 hours in a week," and accordingly "no substantial evidence supports the jury's verdict" on her claim for nonpayment of overtime compensation. Providing a citation to three different pages of the reporter's transcript of her testimony, Lester contends she "testified that she worked more than 8 hours in a day and 40 hours in a week."[7] Lester contends,

---

[7] Throughout her brief, Lester cites to many trial exhibits without providing a citation to the reporter's transcript to show where those exhibits were admitted or discussed during trial. In her appellate argument regarding her claim to unpaid overtime, Lester specifically cites to what she describes as her "weekly calendar of therapy appointments" and the " 'Paid Reports' prepared by Defendants and given to Ms. Lester with her paychecks," but she does not provide corresponding citations to any trial testimony in the reporter's transcript regarding those exhibits. It is not our

17

without elaboration, that "Defendants did not present evidence that contradicted Ms. Lester's testimony. Accordingly, the jury's verdict that Lester was paid for all of the overtime hours that she worked is wrong."

Defendants contend that they *did* present evidence to contradict Lester's claim to overtime compensation. Among other things, defendants explain that "even if Lester worked for more than eight hours in any given day, she did not work overtime since the time spent working for each of the entities did not exceed 8 hours in any given day."

As was the case with Torres's appellate argument, Lester has failed to set forth or discuss any of the evidence that is unfavorable to her contention that the jury should have awarded unpaid overtime compensation. Lester's briefing does not attempt to identify the evidence relied upon by defendants to defeat the claim for unpaid overtime, and she does not attempt to show why defendants' evidence on that issue is insufficient to support the verdict. Because Lester did not comply with the obligation to " ' "set forth in [her] brief *all* the material evidence on the point and *not merely [her] own evidence,*" ' " we treat as waived her challenge to the sufficiency of the evidence to support the verdict. (*Slone, supra,* 106 Cal.App.5th at p. 1173.)

Moreover, even were we to consider Lester's argument concerning her entitlement to overtime compensation, it fails for the additional reason that Lester has not provided an adequate record for us to review it. According to defendants, the jury's finding that Lester did not work any overtime hours for either Vegi, Inc. or TLC can be explained by assuming that the jury "accepted defendants' version that Lester worked for both TLC and [Vegi, Inc.]" and

---

role to search through the voluminous record to locate trial proceedings relating to the exhibits. (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.)

therefore reasonably inferred that "when Lester worked for more than eight hours in a day, she did not work for more than eight hours for either TLC or [Vegi, Inc.]." Lester counters, in her reply brief, that the jury should not have been permitted to make such an inference because TLC and Vegi, Inc. must be treated as joint employers. Invoking the concept of joint employment (although not providing any citation to legal authority), Lester argues that "[u]nder Respondents' approach, an employer could defeat overtime obligations by assigning a portion of an employee's daily work time to another entity owned and controlled by the employer whenever the employee would otherwise qualify for overtime."

However, as was the case with Torres's reliance on a joint employer theory, the written jury instructions and the special verdict forms do not show that the jury was asked to award unpaid overtime compensation to Lester on the theory that Vegi, Inc. and TLC were joint employers. Further, because we do not have a record of the parties' closing arguments, we cannot determine whether the joint employment theory was argued to the jury. Accordingly, Lester has failed to meet her burden to show that the joint employer theory was raised at trial. Lester, therefore, may not rely on that theory to argue that the jury should have made a finding that Lester worked more than eight hours per day and was entitled to overtime compensation.

In sum, for the reasons set forth above, Lester has failed to carry her appellate burden on her challenge to the jury's verdict on her causes of action for unpaid wages, noncompliant paystubs and unpaid overtime compensation.

19

DISPOSITION

The judgments are affirmed. Respondents TLC and Vegi, Inc. shall recover their costs on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.